EDGAR T. SCHMIDT et al.

v.

MARY E. SINNOTT.

*Filed at Springfield March 28, 1882—Rehearing denied June Term, 1882.*

1. EVIDENCE—*cross-examination—as to enmity of witness towards the party against whom he had testified.* On the cross-examination of ·one of the plaintiff's witnesses, he was asked if there had not been a feud or quarrel between his family and one of the defendant's family, which, on objection, was disallowed, the court remarking to counsel that they might inquire as to the witness' own feelings. The witness had already stated that he had not spoken·a word to such defendant since he was a little boy, though his feelings toward him were perfectly friendly: *Held,* that while under the latitude of cross-examination it would not have been improper to allow the question, there was no such error in disallowing it as to call for a reversal. The witness had already stated enough to show the relations between the parties, and that was all the excluded question could have properly elicited.

2. INSTRUCTION—*as to the use of "due and proper care"—whether submitting a question of law.* An instruction in an action for a personal injury growing out of the alleged negligence of the defendant, which submits to the jury the question whether the plaintiff, at the time of the injury, was exercising *"due and proper care,"* is not open to the objection that it submits a question of law to the jury.

3. The words "due and proper care," and "ordinary care," are not unlike in their character in such connection, and while it is the province of law to determine in the abstract what is "ordinary care" as well as what is "due care," yet where a plaintiff bases his right to recover for an injury received at the hands of the defendant, in part upon an allegation that at the time of receiving such injury he was exercising due care, and such allegation is traversed by the defendant's plea, the issue thus formed presents a question of fact for the determination of the jury, precisely in the same manner as if the words "ordinary care" had been used.

4. It can not be said that an instruction framed in the very words of the issue is improper, as submitting to the jury a mere question of law, which simply tells the jury, in order to recover it must appear from the evidence that the plaintiff was exercising due and proper care at the time of receiving the injury.

5. SAME—*former decision.* If some of the expressions used in the case of *Stratton* v. *Central City Horse Ry. Co.* are in conflict with these views, they must be regarded as modified accordingly.

6. SAME—*explanation of terms, etc.* It is often important and necessary for the court to explain to the jury the meaning of technical terms not in common use, or to define the meaning of words or phrases in a contract, statute, or the like. And it is proper for the court, on its own motion or on request, to define specifically what is meant in an instruction by the words "due and proper care," though there is no necessity for doing so except upon request.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. JOHN H. WILLIAMS, Judge, presiding.

Mr. WM. W. BERRY, for the appellants:

In an action to recover damages for injuries sustained by a person who has been run over in the street by a party driving a horse and buggy, it is error to instruct the jury that the person injured may recover· if he was using due and' proper care, and if, by the use of ordinary and proper care by the party driving, the injury could have been avoided. *Stratton* v. *Central City Horse Ry. Co.* 95 Ill. 25.

Such an instruction leaves the jury to determine the question of law as to what is proper care, or as to what degree of care the law requires in such case, and they are not confined to the question whether the plaintiff used ordinary care.

The feelings of a witness towards the parties, and the motives and temper governing or influencing him in the particular matter or transaction, are proper subjects of inquiry, and are not regarded as collateral to the issue. *Nation* v. *People*, 6 Parker, 258; *Howell* v. *Ashmore*, 22 N. J. L. 261; *Hansell* v. *Erickson*, 28 Ill. 257; 1 Wharton on Evidence, sec. 408.

Messrs. CARTER, SIBLEY & GOVERT, for the appellee:

Exception is taken to plaintiff's third instruction, although the attention of the court below was not called to the objection here urged. It is claimed that "proper care" is a question of law, on the authority of *Stratton* v. *Central City Horse*

*Ry. Co.* 95 Ill. 25. The charge in that case was so different from this, that it affords no reason for considering the instruction in this case as misleading, and the words "due and proper care" may be rejected as surplusage, and the instruction still be good.

But, taking all the instructions together, it is difficult to see how the defendants were prejudiced by this instruction. See *Haywood* v. *Merrill,* 94 Ill. 349; *Lawrence* v. *Hageman,* 56 id. 68; *Toledo, Wabash and Western Ry. Co.* v. *Ingraham,* 77 id. 309; *Durham* v. *Goodwin,* 54 id. 469; *Van Buskirk* v. *Day,* 32 id. 260; *Morgan* v. *Peet,* 32 id. 281; *Latham et al.* v. *Roach,* 72 id. 179; *Stowell* v. *Bragh,* 79 id. 525.

Mr. Justice Mulkey delivered the opinion of the Court:

Edgar T. and William G. Schmidt, on the afternoon of the 1st of September, 1879, while driving along Jersey street, in the city of Quincy, in a one-horse buggy, at a somewhat rapid rate, suddenly came in contact with Mary E. Sinnott, a small child, who was at the moment attempting to cross the street. She was knocked down, the horse and buggy passing over her, and was so disabled as to be confined to her bed and room most of the time for about a month, and had not fully recovered at the time of the trial, over a year afterwards. Indeed, the evidence tends to show that she is permanently injured. To recover for the injuries thus occasioned, she, by her next friend, Thomas Sinnott, instituted an action of trespass in the circuit court of Adams county, against the two Schmidts, where the same was tried before the court and a jury, resulting in a verdict and judgment in her favor for $1140, which, on appeal to the Appellate Court for the Third District, was affirmed, and the Schmidts, by further appeal, bring the case here for review.

The declaration charges that the defendants, "not regarding their duty to govern said horse in a careful manner, did so negligently and recklessly drive said horse as to cause the

same to run over the plaintiff then and there attempting to cross said street in a proper and careful manner, with great force and violence, thereby inflicting upon the plaintiff great bodily injury," etc. The facts here charged, including the negligence and recklessness of the defendants and the alleged proper care on the part of the plaintiff, are put directly in issue by the defendants' plea of not guilty, and the cause was tried upon this issue, resulting adversely to appellants; and the conclusion thus reached, so far as the facts are concerned, must be accepted as a finality, as we are not permitted to review them here.

We start out, then, with the fact conceded that while the plaintiff was attempting to cross the street "in a proper and careful manner," she received the injuries complained of, through the negligence and recklessness of the appellants. It only remains, therefore, to inquire whether the trial court committed any error in law which may have contributed to the result stated, for which the Appellate Court should have reversed the judgment.

On the trial of the cause, Dr. Koch, a witness on behalf of plaintiff, was asked this question: "Has there not been a feud or quarrel between your family and Dr. Schmidt's family?"—which, on objection, was held improper, and disallowed, the court remarking to counsel at the time they might inquire as to the witness' own feelings,—and it is claimed this was error. While we do not think, under the latitude of cross-examination, there would have been anything improper in allowing the question, yet questions of this character, where the matter sought to be elicited does not directly affect the controversy, lie so much in the discretion of the trial court that courts of review are not inclined to interpose, except in extreme cases, where there is just reason to believe injustice has been done by reason of an improper exercise of such discretion. We think it clear, however, there was no such error in this case. The witness had already stated he

had not spoken a word to Dr. Schmidt, one of the defendants, since he was a little boy, though his feelings towards the defendants were perfectly friendly. These two facts clearly show the relations between the parties, and that is all the excluded question could properly have elicited.

It is also objected the court gave improper instructions on behalf of the plaintiff. The one chiefly complained of is plaintiff's third instruction, which is as follows:

"Even if the jury should believe from the evidence that the defendant was not, at the time of the injury complained of, driving at an unusual rate of speed, still, if they further believe from the evidence that the defendants did commit the injury upon the plaintiff, as charged in the declaration, while she was using due and proper care, and the defendants might, by using ordinary and proper care at the time, have avoided committing such injury, and that in consequence of a want of such reasonable and ordinary care on the part of the defendants the plaintiff received the injuries complained of, then the jury should find the defendants guilty, and assess the plaintiff's damages at such sum as they may think, from the testimony, will compensate her for the injuries so sustained by her, not to exceed the amount claimed in the declaration."·

To avoid the possibility of doing counsel injustice in attempting to state the substance of their criticism of this instruction, we give it in their own words. It is as follows: "Instruction number three of this series authorizes a verdict for the plaintiff if she was 'using due and proper care' at the time of the accident, and when by 'using ordinary and proper care' the defendants might have avoided committing the injury. What is due and proper care, as the court says in *Stratton* v. *Cent. City Ry. Co.* 95 Ill. 25, is matter of law, and is to be ascertained and defined by the court. Such an instruction is an abdication of its functions by the court, and

submits problems of law to the jury which frequently tax the capacity of the ablest jurists."

The objection to this instruction, as we understand it, consists in the use of the phrase "using due and proper care." Had the framer of the instruction used the words "ordinary care," instead of "due and proper care," we presume the instruction would be unexceptionable to counsel. We confess we are unable to perceive the force of the criticism. It is the province of law to determine in the abstract what is ordinary care as well as what is due care, and there is no difference in the character of the two expressions, viewed from this standpoint. But where a plaintiff bases his right to recover for an injury received at the hands of the defendant, in part upon an allegation that at the time of receiving such injury he was exercising due care, and such allegation is traversed by the defendant's plea, the issue thus formed presents a question of fact for the determination of the jury, precisely in the same manner as if the words "ordinary care" had been used. To the unprofessional mind these terms would doubtless convey substantially the same meaning, and for all practical purposes, when applied to an actual case in court, they do amount to the same thing. Due and proper care simply means that degree of care which the law requires under a given state of circumstances, so that in every case where the measure of diligence is ordinary care, the exercise of such ordinary care would, within the meaning of the law, be using due care in that particular case, and so it would be in a case where the law exacts a higher degree of diligence. The exercise of this higher degree of diligence would, within the meaning of the law, be using due care or diligence under the circumstances of that case.

The term "ordinary care," when used in a general sense, without reference to the facts of any particular case, comes nearer expressing, perhaps, a definite measure of responsibility than the expression "due care," yet the degree of

diligence which it implies greatly varies according to the character of the circumstances to which it relates. A slight examination of the precedents, as found in Chitty and other standard authors, will show that in actions for personal injuries the expressions "due care," and "due and proper care," are uniformly used in charging the degree of diligence or care alleged to have been exercised by the plaintiff at the time of receiving the injury complained of; and in actions against carriers for loss of goods, and also for injuries to the person, the same terms are almost uniformly used in charging the degree of care which the carrier assumed, and also in assigning a breach of such undertaking. It is therefore clear that these terms are not only proper when thus used, but are technically correct, and where the allegations of a declaration thus framed are properly traversed, the questions whether the plaintiff did, and whether the defendant did not, exercise due and proper care, as charged in the declaration, are presented directly as questions of fact for the determination of the jury. So in the case before us, one of the plaintiff's material allegations, upon which an issue was formed and submitted to the jury, is, that at the time of the receiving of the injury she was using "due and proper care."

Upon what principle, then, can it be said that an instruction framed in the very words of the issue is improper, as submitting for the determination of the jury a mere question of law, which simply tells the jury, in order to recover it must appear from the evidence the plaintiff was exercising due and proper care at the time of receiving the injury? If the ground of the objection is the court should have inserted in the instruction the legal signification of those terms, the answer is, we know of no rule of law requiring it. The words are in common use, and are just as well understood by the generality of men as the words "in good faith," "without notice," "maliciously," "fraudulently," and the like. If instead of "due and proper care," the words "ordinary care"

had been used, it is not pretended that it would have been necessary to have inserted in the instruction the legal meaning of the latter terms, and if there is no such requirement as to them, upon what reasonable ground or theory can it be claimed any such necessity exists as to the words "due and proper care?" It could not seriously be contended for a moment there is any legal presumption that the jury would understand the legal signification of one set of terms and not the other. To require the court to insert the meaning of all the terms and expressions used in an instruction, to make it unobjectionable, would tend to utter confusion rather than aid the jury in arriving at a just conclusion with reference to the case before them. If it is necessary to explain the terms used in an instruction, would it not be equally necessary to explain the terms of the explanation? And if so, where would the matter stop?

It is often highly important, and even indispensable, for the court to explain to the jury the meaning of technical terms not in common use, or define the meaning of words or phrases used in a contract, statute, or the like, and even in the case before us it would have been altogether proper for the court, on its own motion or on the application of either of the parties, to have given an instruction specifically defining what was meant by "due and proper care," as applicable to the case in hand, but there was no absolute necessity for doing so unless such an instruction had been asked; nor was there any more reason or propriety, in the absence of such application, for giving such an instruction, than there would have been under like circumstances had the term "ordinary care" been used, for the reason, as we have already seen, there is no principle of law which requires one of these expressions to be explained to the jury more than the other. The views here expressed are fully sustained by a long line of decisions: *Miller* v. *Balthasser*, 78 Ill. 302; *Kerr* v. *Forgue*, 54 id. 482; *Chicago, Burlington and Quincy R. R. Co.* v. *Greg-*

*ory, Admx.* 58 id. 272; *Indianapolis and St. Louis R. R. Co.* v. *Evans,* 88 id. 63; *Schmidt, Admx.* v. *Chicago and Northwestern R. R. Co. et al.* 83 id. 405; *Indianapolis and St. Louis R. R. Co.* v. *Stables,* 62 id. 313; and if some of the expressions of the court in the case of *Stratton* v. *Central City Horse Ry. Co.* 95 Ill. 25, are in conflict with what is here said, they must be regarded as modified by the present opinion.

We have considered the instructions in this case very carefully, and have no hesitancy in saying that when considered as a whole, they presented the law of the case very fully and fairly to the jury—more so, really, than is generally the case. As man, when representing the highest state of culture and civilization, is conceded to be imperfect, it necessarily follows, on the principle a stream can never rise higher than its fountain, all his works are to some extent imperfect; and this principle extends to instructions as well as everything else. It is not to be expected they will be precisely accurate in every particular. It is sufficient if they are substantially so. The administration of the law is intended to be practicable, and to reverse cases and set aside the verdicts of juries merely because the highest degree of accuracy has not been attained in the preparation of the instructions, when the court can see substantial justice has been done, would not only be defeating the chief object of judicial investigations, but would bring the court into deserved disrepute.

The judgment will be affirmed.

*Judgment affirmed.*