HARMON PHENIX

v.

PHEBE CASTNER.

*Filed at Ottawa November 20, 1883.*

1. WITNESS—*credibility—how to be determined.* An instruction that "no matter how prominent or respectable any one man or woman may be, the jury ought not arbitrarily and without just cause to believe such man's or woman's testimony as against the testimony of two or more persons testifying differently upon the same matter," is calculated to mislead, and is erroneous. It would doubtless be understood that in a conflict the greater number of witnesses should control.

2. One "respectable" witness may be believed, notwithstanding any number of persons testify the other way, if from their reputation, or manner of testifying, etc., it is doubtful whether they tell the truth.

3. EVIDENCE—*cross-examination—as to state of feeling of a witness towards a party.* As to collateral matters, in general, if gone into on cross-examination, the party is bound by the answers of the witness, but the state of feeling of the witness toward the adverse party is held not to be irrelevant. Hence it is competent to inquire, on cross-examination, if the witness has not used expressions of animosity or revenge toward the party against whom he bears testimony, and if the witness deny that he has, to introduce evidence to contradict him.

4. The fact the witness states he has an unfriendly feeling toward a party, will not stop the inquiry of the witness as to particular declarations or expressions of ill-will, resentment or revenge, and proof of them, if denied by him. There is a wide difference between a mere feeling of unfriendliness, and one of hatred with a willingness to do a personal injury, which implies a heart disposed to the commission of crime, while a want of friendly feeling may be consistent with the highest type of morality. A party is not compelled to put up with the statement of a witness concerning his own interest or personal relation to the case or the parties.

5. INSTRUCTION—*as to the consideration of testimony—directing the jury in respect thereto.* It is not proper in an instruction to tell the jury that they ought not to believe one man's testimony in preference to that of two witnesses, "without just cause," or that they ought not, "without good and sufficient cause," to believe one side of a witness' testimony and not the other. It leaves each of the jury to determine what is just or good cause, to suit himself.

6.　It is a serious objection to an instruction that it singles out a particular part or piece of evidence, and holds up to the jury the consequences that would result from perjury with reference to it.

7.　On the trial of an action for slander for the speaking of words imputing adultery to the plaintiff, a woman, in which a justification was set up, the court instructed the jury, that "if any witness introduced for the purpose of establishing adultery has testified to circumstances which may be construed against plaintiff, and if those circumstances would tend to show that perhaps the plaintiff committed adultery with such witness, and if such witness positively testifies that such adultery was not committed or attempted, the jury ought not, without good and sufficient cause, believe the things such witness testifies which may be deemed beneficial to defendant, and disbelieve all such testimony (if any) as may be deemed favorable to plaintiff. Especially is this true if the testimony deemed favorable to plaintiff must either be true, or else the witness be a willful and corrupt and intentional perjurer:" *Held,* that the instruction was a mere argument directed against a particular witness, and otherwise erroneous.

Appeal from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Stark county; the Hon. David McCulloch, Judge, presiding.

This was an action on the case, by Phebe Castner, against Harmon Phenix, for verbal slander, in the Stark circuit court. There was a trial at the March term, 1883, of the court, resulting in a verdict for the plaintiff, assessing her damages at $1500. Motion for new trial was made by the defendant, but the court overruled the motion, and gave judgment upon the verdict. The defendant appealed to the Appellate Court for the Second District, and that court, at its May term, 1883, affirmed the judgment of the circuit court. This appeal is from that judgment. Errors are assigned raising the questions discussed in the opinion.

The declaration contains three counts. In the first count it is alleged, that "on the 27th day of June, 1882, the defendant spoke, etc., of and concerning the plaintiff, etc., the following words: 'You (meaning plaintiff) damned dirty bitch.' 'You (meaning plaintiff) are a damned dirty bitch.' 'You (meaning plaintiff) damned dirty whore.' 'You (meaning

plaintiff) are a damned dirty whore.' 'You (meaning plaintiff) God damned dirty whore.' Meaning and intending thereby to give out and be understood, and to charge, that this plaintiff was a bitch and a whore, and had been guilty of adultery."

The second count alleges, that on the 16th day of September, 1881, "there was held a funeral of a little child of this plaintiff, which said child was born in lawful wedlock, and was the child of plaintiff's husband. The said defendant, on the same day, and after said funeral, * * * in a certain conversation had of and concerning the plaintiff, in the presence and hearing of divers persons, and speaking to one and more of said persons, and which said person had just been at the funeral of said child of this plaintiff, maliciously and falsely spoke of and concerning the plaintiff, and referring to this plaintiff, the false, scandalous, malicious and defamatory words following: 'You (meaning the said person who had been to plaintiff's child's funeral) have been down to attend the bastard's (meaning plaintiff's child) funeral.' 'You folks (meaning the persons addressed) have been down to the funeral of the bastard, (meaning plaintiff's child) have you?' 'You (meaning said parties) have been down to the damned bastard's (meaning said child's) funeral?' 'I (meaning defendant) wasn't obliged to go to the damned bastard's (meaning said child's) funeral.' 'I (meaning defendant) didn't have to go to the damned bastard's (meaning said child's) funeral.' 'Have you (meaning said parties to whom he, defendant, was talking,) been to the young bastard's (meaning said child's) funeral?' 'Have you (meaning said parties to whom he, defendant, was talking,) been to the little bastard's (meaning said child's) funeral?' Meaning thereby to charge that the said child of plaintiff was begotten by adulterous intercourse on the part of this plaintiff."

The allegations of the third count are; that "on the same day a little child of this plaintiff, which child was duly begotten in lawful wedlock, was dead, and about to be buried, and

14—108 ILL.

the said defendant maliciously intending to defame and injure plaintiff, and not having his malice and ill-will tempered or softened by the sorrow which the death of said child had placed upon her heart, in a certain conversation which said defendant then and there had and held of and concerning said child and this plaintiff, its mother, in the presence and hearing of, and spoken to, divers persons then and there present, and about to attend the funeral of said child, spoke and published, unlawfully and wickedly, of and concerning this plaintiff, the false, malicious, scandalous and defamatory words following, that is to say: 'You (meaning said person about to attend said funeral) must be hard up to attend the funeral of a bastard,' (meaning this plaintiff's said child.) 'Its (meaning said child's) mother (meaning plaintiff) is a damned bitch of a whore.' 'You (meaning said parties) must be hard up to go to a bastard's (meaning said child's) funeral.' 'It (meaning said child) was a bastard, and its (meaning said child's) father was a bastard, and its (meaning said child's) mother (meaning plaintiff) was a damned bitch.' Meaning and intending to charge and be understood that this plaintiff was unchaste, and had been guilty of adultery."

The defendant pleaded, first, not guilty; and second, that before the committing of the said supposed grievances in the said several counts mentioned, etc., on, etc., at, etc., "the said plaintiff was a whore, and had committed adultery," wherefore, etc. To this there was a general replication, putting in issue the allegation.

Mr. M. SHALLENBERGER, and Mr. B. F. THOMPSON, for the appellant:

It is not irrelevant to inquire of a witness, on cross-examination, whether he has not expressed feelings of hostility against the prisoner: The like inquiry may be made in civil cases, and if the witness denies the fact, he may be contradicted by other witnesses. 1 Greenleaf on Evidence, sec.

450; 2 Phillips on Evidence, (5th Am. ed.) 902, 905; *Rex v. Yewin,* 2 Campb. 638; *Atwood* v. *Melton,* 7 Conn. 66·; *Newton* v. *Harris,* 2 Seld. 345; *Long* v. *Lambkin,* 9 Cush. 361; *Folson* v. *Brown,* 5 Foster, 114; *Drew* v. *Wood,* id. 363; *Stark* v. *People,* 3 Denio, 106.

It is the right of a party to show the animus and bias of a witness towards him, and the extent thereof. *Daflin* v. *State,* Texas App. 184.

A witness may be contradicted as to statements made, on cross-examination, if the evidence tends to show the temper, disposition or conduct of the witness in relation to the cause or the parties. *State* v. *Roberts,* 81 N. C. 605; *Polk* v. *State,* 62 Ala. 237; *Mason* v. *State,* 7 Texas App. 623; *Gray* v. *People,* 22 Mich. 222.

The plaintiff's ninth instruction is bad, because it leaves out the word "credible." To be good it should read, "two or more credible persons."

The tenth instruction for plaintiff is bad, because argumentative. It is a speech,—not an instruction. The last part is especially bad. It tells the jury they must believe the plaintiff's testimony to be absolutely true, if to believe otherwise would make the witness liable for perjury.

Mr. James H. Miller, for the appellee:

The witness White admitted that in 1881 he was unfriendly to appellant, that now he was unfriendly to him, and that he had feelings against him. This could ·not have been made stronger by contradicting his sworn statements, if he had made any. *Chicago, Rock Island and Pacific R. R. Co.* v. *Bell,* 70 Ill. 104; *Schmidt et al.* v. *Sinnott,* 103 id. 160.

A witness can not be cross-examined as to any distinct collateral fact for the purpose of afterwards impeaching his testimony. *Chicago, Burlington and Quincy R. R. Co.* v. *Lee,* 60 Ill. 504; 1 Starkie on Evidence, 189; 1 Greenleaf on Evidence, 449.

As to the objection urged against appellee's instructions, they are all without force, in our judgment, when the cause is fairly considered, as we look at it. They are all to be construed as a series, in passing upon them. *Toledo, Wabash and Western Ry. Co.* v. *Ingraham*, 77 Ill. 309.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

There was a conflict in the evidence with reference to the speaking of the words in the second and third counts, and also in that with reference to the defence of justification.

The ninth instruction, given at the instance of the plaintiff, was as follows:

"No matter how prominent or respectable any one man or woman may be, the jury ought not arbitrarily and without just cause believe such man's or woman's testimony as against the testimony of two or more persons testifying differently upon the same matter."

We are of opinion that this was calculated to mislead. The fact that two or more persons testify one way, and a "prominent and respectable" person testifies another way, is all that is tangible. What is "just cause," in the sense in which the term is here used, is not defined, but is left to be determined by the members of the jury to suit themselves. One "respectable" person may be believed, notwithstanding any number of persons testify the other way, if, from their reputation, or the matters or manner of their testimony, it is doubtful whether they tell the truth. A jury would doubtless understand this as asserting that where two testify one way, and only one the other way, the one, although "prominent and respectable," ought not to be believed as against the two, disregarding any circumstances affecting their credibility, and the letter of the instruction plainly justifies this,— in other words, that mere numbers should control.

The tenth instruction, given at the instance of the plaintiff, is as follows:

"If any witness, introduced for the purpose of establishing adultery, has testified to circumstances which may be construed against plaintiff, and if those circumstances would tend to show that perhaps the plaintiff committed adultery with such witness, and if such witness positively testifies that such adultery was not committed or attempted, the jury ought not, without good and sufficient cause, believe the things such witness testifies which may be deemed beneficial to defendant, and disbelieve all· such testimony (if any) as may be deemed favorable to plaintiff. Especially is this true if the testimony·deemed favorable to plaintiff must either be true, or else the witness be a willful and corrupt and intentional perjurer."

This is a mere argument directed against a particular witness, and erroneous in the implied assumption that if his evidence be false in a particular respect, he will be guilty of willful and corrupt perjury, while if false in another respect equally pertinent and material, he will not be guilty of willful and corrupt perjury. Besides, the jury are left in the dark as to what, in such connection, is meant by "good and sufficient cause." It is always seriously objectionable to single out in an instruction a particular part or piece of evidence, and hold up to the jury the horrible consequences that would result from perjury with reference to it. The jury are supposed to know that all witnesses testify under oath, and they should not be morally intimidated by pictures of the results of perjury in one part more than in another.

During the progress of the trial Frederick S. White was called and examined as a witness on behalf of plaintiff, and gave material evidence on her behalf. On cross-examination he admitted that he was then unfriendly towards the defendant. He was then asked if he had not, on different occasions, to different persons, (giving time, place and person,) made remarks (that were repeated in the several questions) in regard to the defendant, showing a bitter and revengeful

feeling towards him. He denied that he had made such remarks. The counsel for the defendant, at the proper time, called the persons named in these questions, and offered to prove by them, respectively, that the witness had made such remarks, but the court, on objection, refused to allow the witnesses to be heard in that respect. As to collateral matters in general, if gone into on cross-examination, the party is bound by the answers of the witness, but the state of feeling of the witness towards the adverse party is held not to be irrelevant, (1 Greenleaf on Evidence, sec. 450,) and hence it is held to be competent to inquire, on cross-examination, whether the witness has not used expressions of animosity or revenge towards the party against whom he bears testimony, and if the witness deny that he has, to introduce evidence to contradict him. 2 Phillips on Evidence, (Cowen & Hill's and Edwards' notes,) 971 ; Best on Evidence, (1st Am. from 6th Lond. ed.) 1081 ; *Stark* v. *The People,* 5 Denio, 106 ; *Newton* v. *Harris,* 2 Seld. 345.

But counsel insist the witness having admitted that he felt unfriendly towards the defendant, the inquiry should have been stopped,—that that was all that could be shown by proof of the making of the revengeful remarks,—and in confirmation of this he cites *Schmidt et al.* v. *Sinnott,* 103 Ill. 160. That case is not at all analogous. There the witness was asked: "Has there not been a feud or quarrel between your family and Dr. Schmidt's family?" This was disallowed by the trial court, because the inquiry was not limited to the feelings of the witness, and we said it might, with propriety, have been answered, but that the ruling did no harm, because the witness elsewhere stated fully what his feelings were towards the party.

Between a mere feeling of unfriendliness, which was here admitted, and a willingness to do a personal injury, of which the offer was to make proof, there is morally a very wide difference. The one implies, of necessity, no lawlessness,

and may be perfectly consistent with the highest type of morality, while the other shows a disposition of lawlessness, and indicates a heart favorable to the commission of crime. Suppose it could be proved that a witness had said his feelings towards a party were such that he would be willing to commit any crime that could injure him,—even perjury. Must the inquiry be stopped in such a case by the simple answer of the witness that he felt unfriendly towards the party? Surely not. The inquiry would then, beyond all question, go directly to his veracity. If, in such case, it would not be limited to the answer of the witness, upon what principle can that case be distinguished from this, so as to limit the inquiry here to the answer of the witness? We can perceive none. *Geary* v. *The People*, 22 Mich. 222, is in point. There the witness was asked whether she had not made certain specified declarations in regard to the defendant, and the trial court refused to allow the question to be answered. On error to the Supreme Court this was held to have been improper, and ground of reversal, the court, among other things, saying: "We think this proof should have been admitted. It is true that where a witness is cross-examined on matters purely collateral, the cross-examiner can not inquire of other witnesses whether the answers are truthful, because the inquiry would open irrelevant issues. But the interest or bias of a witness has never been regarded as irrelevant. It goes directly to his credit, and must determine, with the jury, how far facts depending on his evidence are to be regarded as proven. A party can not be compelled to put up with the statements of a witness concerning his own interest or personal relation to the case or parties, where it becomes necessary to know his position." We think it was error to refuse to admit the evidence.

For the errors indicated the judgment is reversed and the cause remanded.

                                        *Judgment reversed.*