JOHN F. DEVINE, Admr., Appellant, vs. THE NORTHWEST-
ERN ELEVATED RAILROAD COMPANY, Appellee.

*Opinion filed December 16, 1914.*

1. APPEALS AND ERRORS—*when refusal to permit proper ques-
tions to be answered is not harmful.* Refusal of the court to per-
mit proper questions to be answered is not harmful, where the facts
sought to be proved by such questions are established by testimony
of other witnesses which is in no way disputed.

2. INSTRUCTIONS—*instruction need not define "due and proper
care and caution."* An instruction in an action for damages for
wrongfully causing the death of the plaintiff's intestate, which re-
quires the jury, in order to return a verdict for the plaintiff, to
find that the deceased was in the exercise of due and proper care
and caution for her own safety at and just before the accident, is
not erroneous because it does not define the words "due and proper
care and caution."

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. JOHN McNUTT, Judge,
presiding.

O'DONNELL, DILLON & TOOLEN, for appellant.

ADDISON L. GARDNER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action on the case brought in the superior
court of Cook county by appellant, as administrator of the
estate of Josephine Welter, deceased, against appellee, for
wrongfully causing the death of appellant's intestate. The
jury returned a general verdict in favor of appellee, and
also returned, in answer to an interrogatory submitting
that question, a special finding that the deceased was not
"in the exercise of due and proper care and caution for
her own safety at the time of the accident which resulted
in her death." The judgment entered on such verdict was

265 – 41

affirmed on appeal to the Appellate Court. The case is brought here on a certificate of importance.

The deceased met her death on Monday morning, October 11, 1909, shortly after twelve o'clock midnight. She had been working for some months previous to the accident as a domestic for the Huston family, at 1135 Lunt avenue, Chicago. The Sunday night previous to her death she had been out and was returning in company with a young man named Nicholas Sweig. As they were walking east on Lunt avenue a few minutes after twelve o'clock they came to the double-track railroad then in use by the appellee company. The railroad at this point runs north and south. At Morse avenue, the next street south of Lunt, is a station, the platform of which extends north to within 125 feet of Lunt avenue. Gates were placed on each side of the track at the Lunt avenue crossing, consisting of a long arm which closed the street and a short arm which closed the sidewalk, when down. These arms were hung on iron posts which stood in the street a short distance from the edge of the sidewalk, and the two long arms met in the middle of the street when the gates were down. For the full space of the sidewalk and for some little distance out into the street foot passengers were prevented from going under the short bar of the gate by lattice work which was suspended from that bar, making it impossible to go under even by stooping. Just south of Lunt avenue, between the railroad tracks, was a tower, in which was stationed a man who had charge of the crossing and raised and lowered the gates. The railroad tracks in this part of Chicago across these streets and for some distance north and south are laid on the surface of the ground at grade with the streets. The night was dark and a misty rain was falling. As the deceased and her companion approached the railroad from the west on Lunt avenue they found the crossing gates down and a south-bound passenger train, consisting of several cars, passing over Lunt avenue crossing, on the east track.

There is some conflict in the evidence as to just what happened after this train had passed. Sweig testified that immediately after it had passed the gates began to rise, and when a little over half way up the deceased stooped down a little and passed under the gate and onto the track, where she was struck by a car coming north on the west track and killed. It is clear from his testimony that he was not watching the deceased at the time she started forward to cross the railroad tracks, and he does not claim to have seen her until just as she was passing under the gate, when he tried to stop her but failed. His testimony given at the inquest does not accord in every particular with that given at the trial. This may be in part accounted for by the fact that he testified through an interpreter. The motorman on the car that struck the deceased testified that he first saw her when she was about ten feet from the car, coming up from under the long arm of the gate,—the arm over the street,—just rising up from a stooping position; that she took about two steps before the car hit her, and that the gates were down when he passed the crossing. The towerman at this crossing did not see the deceased or her companion and did not know of the accident until a short time after it had happened. He testified that he did not raise the gates after the passenger train went through and that they were down at the time that the north-bound car crossed Lunt avenue. Morse avenue (Rogers Park station) is a regular stop for passenger trains going in either direction. Only occasionally a single car may go through without making a stop. The north-bound car in question did not make the stop and had no one on it except the motorman and conductor.

No positive evidence was introduced as to the rate of speed at which this car was traveling at that time. The conductor testified that he first noticed that the brakes were set when they reached the crossing at Lunt avenue. There is testimony tending to show that the car went approxi-

mately 656 feet north of that street before it was brought
to a full stop. The motorman was asked by the appellant's
counsel, "When did you apply the brakes?" and, "Did you
stop at the street just preceding?"—meaning Morse avenue.
The towerman was also asked, on cross-examination, "And
this car went on north and passed Greenleaf avenue, did it
not?"—Greenleaf avenue being the second street north of
Lunt. To all of these questions the court sustained objec-
tions. Conceding for the purposes of this case that the
court should have permitted these questions to be answered,
we cannot see how appellant was injured, as the facts that
appellant's attorneys were trying to prove by securing an-
swers to these questions were proved by other witnesses
whose testimony was in no way disputed.

Counsel for appellant further insist that the trial court
committed error in the giving of certain instructions for ap-
pellee, especially instruction 14, which told the jury, among
other things, that in order to find a verdict for appellant
they must believe, from the evidence, that the deceased was
in the exercise of "due and proper care and caution for her
own safety, as defined in these instructions, at and just be-
fore the time of the accident complained of." The argu-
ment especially criticises the using of the words "due and
proper care and caution" without defining what those words
mean, counsel insisting that the jury might be misled as to
their meaning unless further defined. With this we cannot
agree. The words are not technical. They are in common
use. To require the definition of all words or expressions
used in instructions would often tend to confuse rather than
aid the jury. If it is necessary to explain such terms, might
it not be equally necessary to explain the terms used in
the explanation? An instruction using the words "due and
proper care" was held, after a lengthy discussion, not mis-
leading in *Schmidt* v. *Sinnott*, 103 Ill. 160. To uphold ap-
pellant's contention would be to overrule that case. The
criticism by counsel of the use of the terms "negligence"

and "due and ordinary care" in the instructions comes within the same line of reasoning.   As was said in the case last referred to, while it might have been proper for the court, on its own motion or on the application of either of the parties, to have given an instruction specifically defining these terms as applicable to the case on trial, there was no necessity for so doing unless such an instruction had been asked.   It is hardly to be expected that instructions will be precisely accurate in all particulars.   It has repeatedly been held by this court that it is sufficient if they are substantially accurate.   *Schmidt* v. *Sinnott, supra;* see, also, *Beard* v. *Maxwell,* 113 Ill. 440; *Calumet Iron and Steel Co.* v. *Martin,* 115 id. 358; *Chicago and Eastern Illinois Railroad Co.* v. *White,* 209 id. 124; *Carlin* v. *Grand Trunk Western Railway Co.* 243 id. 64.

Certain other questions are raised incidental to those already considered, which, in view of the conclusions reached, we are not required to discuss.

We find no error in the record that would justify the reversal of the cause.   The judgment of the Appellate Court will be affirmed.        *Judgment affirmed.*