[No. 3169.   Nov. 9, 1927
On Motion for Rehearing, Jan. 9, 1928.]

STATE v. BURKETT.

[262 Pac. 532.]

Neal & Neal, of Las Vegas, and K. W. Edwards, of Ft. Sumner, for appellant.

R. C. Dow, Atty. Gen., and Frank H. Patton, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT

WATSON, J. ■ Harvey Burkett was convicted of murder in the second degree for the killing of Ora Hall. This court reversed the judgment. State v. Burkett, 30 N. M. 382, 234 P. 681. On retrial, he was convicted of voluntary manslaughter. He has again appealed, and the present judgment must also be reversed. The trial court erred in unduly limiting cross-examination of J. T. Northcutt, a state's witness, who gave damaging testimony.

The point arises upon the following record:

"Q. At any time during the fall of 1921 did you accuse the Burkett boys of destroying your watermelon patch and go down there with a gun and watched your patch for the purpose of trying to kill them?

"The District Attorney: Objected to, if the court please, as not being cross-examination, and has nothing to do with the issue in the case.

"The Court: Sustained.

"Defense Counsel: We offer it for the purpose of showing feeling. We take an exception to the ruling."

From the whole cross-examination of the witness it appears that its main purpose was to show an animosity towards the accused, for its bearing on the witness' credibility in the particular case. He had previously denied "much trouble" regarding fencing, but had admitted that since having "some words" about it, he and the accused had not been "real friendly." He had also admitted that he had "taken a great deal of interest in this case," and that he had employed counsel to assist in the prosecution. The following admission also appears:

"Q. Now I will ask you whether or not you haven't frequently appeared before the grand jury trying to indict the Burkett boys, Joe and Harvey, for different supposed offenses that they committed, talked to the officers here about indicting them for supposed offenses you thought they committed. A. About twice."

Appellant contends that by this ruling he was denied the right to show the extent of the witness' animosity. It requires no argument to prove the contention. That an accused has the right to show animosity of an adverse witness is not, and cannot be, questioned. The Attorney General does not attempt to justify the ruling by the objection made to the question. Nor do we think the court sustained the objection on the grounds therein stated. The court's view appears from a remark made just previously:

"The witness has already been fully interrogated about his state of feeling toward the defendant and has testified that he does not and did not have a friendly feeling toward the defendant."

It would seem that the court considered, as matter of discretion, that the cross-examination had proceeded far enough along that line.

The Attorney General endeavors to justify the ruling by the text at 28 R. C. L. § 201, where Richardson v. Gage, 28 S. D. 390, 133 N. W. 692, Ann. Cas. 1914B, 534, is quoted. He contends that it was within the discretion to limit the cross-examination to facts showing the existence of hostility and to exclude matters pertinent only "to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it." The Attorney General concerns himself only with that part of the question which refers to the witness' accusation that the accused had destroyed his watermelon patch. He ignores that part seeking to show the purpose to kill. It is true that there could be no issue as to the fact of the destruction or as to whether the accusation, if there was one, was true. But the existence of the purpose to kill was relevant and material. The case cited (Richardson v. Gage, supra) was unfortunately selected. After quoting at length from 2 Wigmore, § 943, the court concluded that, "If the views of this learned author are to be accepted as a correct statement of the law, it may be very much doubted whether the court * * * may not have erred * * *" in sustaining objection to the question, "Is not it a fact in the month of August last year, you made an assault on Mr. Gage [defendant] with a revolver and was arrested and pleaded guilty?" the wit-

ness having already admitted, "We are not on the best of terms; that is, I do not think he likes me." The author of the note following the case as reported in Ann. Cas. 1914B, 538, accepts this as a ruling that the question was competent, and says, "The doctrine thus announced receives ample support from the authorities," citing many decisions.

This court has often said that the matter of cross-examination, to test credibility, is largely within the dis· cretion of the trial court. State v. Carter, 21 N. M. 166, 153 P. 271, State v. Starr, 24 N. M. 180, 173 P. 674, and State v. Sedillo, 24 N. M. 549, 174 P. 985, involved complaints of excessive latitude in cross-examination of witnesses for the defense. They are not in point here. Such a discretion has been recognized, however, in considering limitations placed upon the ·cross-examination of state's witnesses. Territory v. Chavez, 8 N. M. 528, 45 P. 1107; Territory v. Claypool, 11 N. M. 579, 71 P. 463; Territory v. Garcia, 15 N. M. 540, 110 P. 838; State v. Rodriguez, 23 N. M. 156, 167 P. 426, L. R. A. 1918A, 1016. In the Clapool and the Rodriguez Cases, the action of the trial court was sustained, but those cases are clearly distinguishable from this. In the Chavez and the Garcia Cases, the trial court was held to have abused discretion. In the Chavez Case it was said: "The discretion should be liberally exercised." In the Garcia Case, it was said:

"The principle of exclusion at the discretion of the court * * * cannot be extended to the exclusion of evidence on a fact so vitally affecting the credit of the witness."

In State v. Rodriguez, supra, it was remarked:

"We fully appreciate the fact that great latitude should be allowed in cross-examination of the witnesses in capital cases, and that the ·court should seldom interpose, except where there is clear abuse of the right."

These expressions represent the liberal policy everywhere laid down as correct. We cannot say, however, that this court has ever considered the precise situation here presented, namely, a checking of cross-examination intended to ·affect credibility in the particular case because of animosity, so long as the accused was offering to show

facts pointing to a greater degree of animosity than had yet been shown or admitted.

A reading of the cases cited in the Ann. Cas. note above mentioned causes us to reject most of them as not going to the point here stated. The following cases there cited do lend support to appellant's contention: People v. Drolet, 157 Mich. 90, 121 N. W. 291; State v. Malmberg, 14 N. D. 523, 105 N. W. 614. Other decisions, however, clearly establish the rule contended for. Fincher v. State, 58 Ala. 215; People v. Bird, 124 Cal. 32, 56 P. 639; Phenix v. Castner, 108 Ill. 207; State v. Collins, 33 Kan. 77, 5 P. 368; State v. Dee, 14 Minn. 35 (Gil. 27); Stewart v. Kindel, 15 Colo. 539, 25 P. 990. In the Alabama case the court said:

"The extent of the hostility of the witness is the subject of just inquiry. It is not enough, and the door to further cross-examination is not closed, so that it does not descend to the particulars of the controversy between the witness \and the party, by the mere statement of the witness that he is hostile to the party against whom he is testifying. The party has the right to go further, and show that the hostility is malignant and that the witness has the inclination, and would not scruple at the means or manner of doing him the most grievous injury."

The California Supreme Court said:

"The fact that it already appeared that Griffith was hostile did not supply the place of the proffered testimony. If true, such evidence would tend to establish a persecuting spirit, and a degree of hostility which, in the opinion of the jury, might affect the value of his evidence."

The Illinois court argued:

Between a mere feeling of unfriendliness, which was here admitted, and a willingness to do a personal injury, of which the offer was to make proof, there is morally a very wide difference. The one implies, of necessity, no lawlessness, and may be perfectly consistent with the highest type of morality, while the other shows a disposition of lawlessness, and indicates a heart favorable to the commission of crime."

In Kansas, the state's present contention was answered thus:

"If the admission made by the witness in this regard had been as broad and inclusive as the testimony offered or called for by the questions asked, then the objection would have been well taken. The defendants, however, were entitled to know the character and extent of the feeling of enmity which the witness en-

tertained toward them. The question of bias and prejudice, and how far her hostility toward the defendants may have affected her testimony were for the jury, and they cannot properly determine this until they learn the degree and intensity of the hostile feeling."

In Minnesota, the court said:

"A mere vague and general statement that hostile feeling existed, would possess little force. It certainly must be proper to ask what the expression of hostility was, for the purpose of informing the jury of the *extent* and *nature* of the hostile feeling, so that they may determine how much allowance is to be made for it."

Reluctant as we naturally are to require a third trial of this case, we are compelled to yield to the high authority of the able courts above cited and to the force of their reasoning. No decisions to the contrary have come to our attention. Most of the cases are cited at 40 Cyc. 2660, to the following text:

"The extent of the inquiry as to interest or bias rests in the discretion of the trial court, and depends upon the particular situation developed at the trial; and where the interest or bias of a witness clearly appears, the court may properly refuse to allow the inquiry to go any further, unless for the purpose of showing the degree of hostility. * * * "

Numerous other objections are here urged. We have considered, and overrule, them. Most of those made to the instructions, and that to the reading of the testimony of witnesses given at the former trial, we think unsound, under former decisions of this court.

For the error pointed out, the judgment must be reversed and the cause remanded for new trial, and it is so ordered.

PARKER, C. J., and BICKLEY, J., concur.

### ON MOTION FOR REHEARING.

WATSON, J. ▉ The state has quite properly moved a rehearing. The motion is supported by a very helpful brief prepared by the able district attorney who conducted the prosecution. It thoroughly reviews the evidence and brings many decisions to our attention. The contention is that the hostility of the witness was so made to appear that the rejection of the offered evidence was not prejudicial. It cannot be sustained.

We have held in this case that an offer to prove by a state's witness, on cross-examination, that he entertained a deadly animosity for the accused may not be denied because the witness has admitted an unfriendly feeling. No more. We have not held that the cross-examiner may cumulate instances of the same degree of hostility, nor that he may inquire into the causes for it, or as to the justification or lack of justification for it. All agree that the bias is a material fact. Manifestly, the degree of it is just as material. In respect to its effect upon credibility there may be as much difference between deadly hatred and unfriendly feeling as between the latter and friendly feeling.

We cannot agree that the witness did not testify to "any very material facts." The issue was self-defense. Appellant claimed that the deceased attacked him with a knife which was found at the side of the deceased. The witness' testimony tended to show that the knife did not belong to the deceased, thus supporting the theory that the whole defense was fabricated. See statement of facts. State v. Burkett, 30 N. M. 382, 234 P. 681.

It is true that counsel were allowed to question the witness as to other facts which, if answered in the affirmative, would have shown the degree of bias sought by the rejected question to be shown. But to those questions negative answers were given. It is true, also, that on some of these negative answers the witness was directly impeached, and that the record contains considerable evidence to sustain the contention of appellant as to the witness' deadly animosity. But the jury may not have believed appellant's witnesses. Such proof cannot cure the error in refusing appellant the right to obtain an admission from the witness if he could. An admission would have been conclusive. Nor can we conjecture that, in line with the admissions and denials which the record shows the witness to have made, he would have denied the incident to which the question refers. We must here assume that he would have admitted it. The objection and ruling were of course, on that assumption.

Of the numerous interesting cases cited in the present brief, we need notice but two. In Jennings v. State, 42 Tex. Cr., R. 78, 57 S. W. 642, the witness had already, before the cross-examination was checked, *admitted in full measure* his hatred towards defendant." In State v. Henry 143 Wash. 39, 254 P. 460, the facts *shown by the state's own witnesses* moved the Supreme Court to say:

"That any right-minded man, believing that the woman he intended to marry had been forcibly outraged, would not be hostile to the person believed to be guilty, to the full extent of his capacity for hostility, is beyond comprehension, and threats, even to kill, could add nothing."

Even in that case, it is said:

"We think the trial court might well have received the offered proof."

We fully appreciate, as counsel suggests, that it is a grave matter to reverse this judgment. We also appreciate that the error results from a momentary lapse by counsel and court during the course of a difficult trial otherwise ably and fairly conducted. Yet, since appellant has not had a fair trial, his conviction cannot be sustained. The motion for rehearing must be denied.

PARKER, C. J., and BICKLEY, J., concur.