[No. 3145.   Nov. 17, 1928.]

STATE v. ROYBAL.

[273 Pac. 919.]

Renehan & Gilbert, of Santa Fe, for appellant.

R. C. Dow, Atty. Gen., and F. H. Patton, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT

BICKLEY, J. This case is appealed from the district court of the Eighth judicial district, wherein the defendant, Venceslado Roybal, was convicted of assault with a deadly weapon upon the person of one Rafael Vigil.

The defendant, his wife, two uncles, his father-in-law, and brother-in-law, went to the house of the prosecuting witness, where the defendant desired to see his mother, who was staying with said prosecuting witness, Vigil. The mother of the defendant had previously been staying with the defendant, but, after his departure to secure employment in Colorado, she left defendant's home and went to the home of the prosecuting witness, and upon defendant's return from Colorado, and learning of the absence of his mother, he, either upon his own volition or upon her request, went with his other relatives to the prosecuting witness' house to converse with his mother. When defendant and the other parties arrived at Vigil's house, Vigil himself was not at home, but shortly thereafter, returned, while defendant was conversing with his mother. While defendant was sitting on the side of his mother's bed and talking with her, the prosecuting witness interposed a remark directed to the defendant, and, as he testified, because of the language used by the defendant, and this action on his part, immediately precipitated a fight.

Vigil, the prosecuting witness, testified that, when Elizardo Roybal, his uncle, took hold of him, and Benito Roybal took hold of the defendant, the defendant raised his two hands and drew a gun, and in the same act raised the hammer of the gun and directed it toward him, but that the brother-in-law of the defendant, Fidel Sandoval, struck the gun and deflected the bullet when the pistol was discharged, causing it to go wild.

The wife of the prosecuting witness, Sarah Vigil, testified that, after her husband came into the house, and while the defendant was talking to the mother, who was also her mother, the defendant made the following remark, addressed to his mother, "I will give you all you want, if you will go to my house, provided that I do not want this sister of mine to enjoy anything;" and that her husband, Rafael Vigil, then made this statement, "Be careful in talking, Venceslado—I don't want any trouble in my house." She testified that the defendant advanced toward her husband, and drew a pistol from his pocket, and that Fidel Sandoval took hold of the hand of defendant and diverted the direction of the pistol.

The defendant testified that he went to the house of Vigil's brother-in-law, upon the date the trouble is alleged to have occurred; that he had an automatic pistol; that he never took the pistol from his pocket; that he heard a shot from his rear; that he did not know who fired the shot; and that he never had the pistol in his hand; and that his brother-in-law, Fidel Sandoval, took the pistol from his pocket. Fidel Sandoval testified that he took a pistol from defendant's pocket, and that the wife of the prosecuting witness tried to take the pistol from him, and that, during the scuffle with her, it was discharged. The two uncles, Elizardo and Benito, testified that they did not see who fired the shot. Benito testified that he saw the wife of the prosecuting witness have hold of Fidel Sandoval's hand. The witness Elizardo Roybal testified that the defendant did not hold his hands up in the air with the pistol in them, and further that Mrs. Roybal, Sarah Vigil, and Fidel Sandoval, had hold of the gun. Apolonia Roybal, wife of the defendant, testified that the pistol was in the hand of the witness, Fidel Sandoval, when it was fired, and that the pistol was discharged when Sarah Vigil, wife of the prosecuting witness, and Fidel Sandoval, were struggling for its possession. It is thus evident that a pistol was discharged during the difficulty in Vigil's house, but, as to who was responsible for discharging it, the evidence is conflicting.

The first point presented by the brief of counsel for appellant is that the court erred in sustaining the ob-

jection of the state to the questions propounded by the defendant, to the prosecuting witness, Vigil, as to ill feeling between the father and mother of the defendant. During the course of the cross-examination of the prosecuting witness, the following questions were propounded to the witness and excluded upon objection by the state:

"Q. You have known the defendant for a good many years, haven't you? A. Yes, sir.

"Q. You knew his father, Isaias, before his death, did you not? A. Yes, sir.

"Q. You knew of the family troubles between Isaias and his wife, did you not?

"Mr. Whelan: We object to that for the reason that it's improper cross examination, immaterial and incompetent.

"The Court: Objection sustained.

"Mr. Gilbert: The defendant will state that this question was asked as preliminary to the question, and if permitted by the Court, the defendant will show that there were family disagreements between the father and mother of this defendant known to this witness, and that this witness had taken sides with one of the members of the family, and the defendant with the other, and that out of that had grown a feeling of hostility between the parties, we offer this as showing the hostility.

"Mr. Voorhees: We object for the same grounds.

"The Court: Objection sustained.

"Mr. Gilbert: Is the offer denied?

"The Court: Yes.

"Mr. Gilbert: Exception."

Immediately following the foregoing proceedings, the counsel for appellant developed, elicited from the prosecuting witness on cross-examination, the following answer to a question: "We were not on friendly terms," and further that such unfriendliness had existed for three or four years. It will be seen that the question excluded on cross-examination, and the offer made by counsel for appellant, was for the purpose of showing hostility between the witness and the defendant, and pursued with the apparent purpose of affecting the credibility of the witness. It was not specifically claimed that the answers of the witness, if permitted, would show a greater degree of hostility than the witness admitted in answers to other questions.

Neither the question nor the offer refused would show a state of feeling of the witness toward the defendant. The answers to such questions might show a cause of such unfriendly feeling. We are unable to perceive that affirmative answers to the questions propounded or offered would surely point to a greater degree of hostility than that admitted by the witness.

We have recently examined the question in State v. Burkett, 33 N. M. 159, 262 P. 532. We there decided that the matter of cross-examination to test credibility, is largely within the discretion of the trial court, approving our former holdings to the same effect. We also decided in that case that such discretion did not extend to a refusal to permit inquiry as to a purpose entertained by the witness to kill accused, although the witness had already admitted unfriendliness, and an interest in the prosecution. We disclaimed holding that the cross-examiner may cumulate instances of the same degree of hostility, or that he may inquire into the cause for it, or as to the justification for it. There might be instances where it would be apparent that the cause of the unfriendliness would indicate the degree and intensity thereof. If so, the discretion of the trial court would be invoked to permit such a showing. State v. Burkett, supra, is easily distinguishable from the case at bar, and we do not think the trial court abused its discretion in the rulings made.

The second assignment of error is: "The court erred in sustaining the objection of the State to the questions propounded to Sarah Vigil, the wife of the complaining witness, as to why she called her husband." The question, objections and ruling, are as follows:

"Q. Why did you call your husband and send word to him to come in when Venceslado came into the house?

"Mr. Whelan: We object to that as being immaterial.

"The Court: Objection sustained."

Appellant, speculating, says:

"It appears that shortly after defendant and his relatives came to the complaining witness's house, he in response to a request sent him through his daughter by his wife, came immediately to the house, and the defendant desired to elicit from this witness,

the reason why she sent for her husband when the defendant and their relatives came to the house. She, in all probability, knew of the ill-feeling existing between her husband and the defendant, and why, cognizant of the existence of the feeling, she should send for her husband, when the defendant was in her house, is not exactly clear, unless it be that she desired her husband to eject him from the house."

In his reply brief, the appellant says that this witness was hostile, and therefore he had a right to develop such fact by the question propounded. No authorities are cited, no substantial arguments presented. No offer or suggestion was made to the trial court, as to the nature of the testimony sought to be elicited by the witness or the purpose thereof. In State v. Martin, 32 N. M. 48, 250 P. 842, we held:

"While the right of cross-examination, thorough and sifting, should not be abridged, nevertheless, even upon cross-examination, where an answer to a question propounded to a witness is refused by the court, and such refusal is assigned as error, it must appear that counsel, on the trial, stated to the court, either what he expected to prove, or (if that is impracticable or impossible) what he desired to prove, by the answer to such rejected question. Upon failure of such statement to the trial court, this court cannot review the alleged error."

We find no error in the ruling of the court.

It is next urged that "The court erred in sustaining the objection of the State to the testimony offered by the defendant, as to his reason for coming to his sister's house the day the trouble occurred."

In view of the fact that the court only sustained the objection to the extent of excluding what a servant or boy said to defendant, and permitted to stand defendant's statement that he was called there and immediately thereafter, in answer to a question as to why he went to that house, answered that he went to bring his mother, we hold that the exclusion of the hearsay, in explanation of his reasons for going, if admissible on any theory, was not prejudicial.

Defendant's fourth point is that: "The court erred in striking out the testimony of the complaining witness, to the effect that he did not plead guilty to the offense of assault with a deadly weapon, prior to the in-

stant case, when the defendant offered to prove the affirmative of that issue."

When the complaining witness, Rafael Vigil, was on the stand, the following proceedings took place:

"Q. You were convicted in this court with assault with deadly weapons with a knife on Justo Espinosa. A. Yes, I was indicted.

"Q. You plead guilty and was fined $50.00, is that not a fact?

A. No sir, I did not plead guilty, I arranged or fixed it up with him.

"Mr. Voorhees: Then we move that that question of conviction be stricken.

"The Court: Objection sustained. Gentlemen of the jury you will not give any consideration whatever to the question and the answer regarding the indictment of this witness upon a charge of assault upon Justo Espinosa.

"Mr. Gilbert: We object in the court instructing the jury and the ruling of the court and state at this time —

"The Court: You need not state anything you have your objection and exception.

"Mr. Gilbert: I will come to the bench—

"The Court: Do you want to make an offer.

"Mr. Gilbert: We offer to lay a predicate by this witness as to his conviction of an assault with deadly weapons upon Justo Espinosa in cause No. 994 and for the introduction of the court record on that case as impeachment if the witness denies the truth of that charge.

"The Court: The offer is overruled."

The term "impeachment" is confined by legal usage to efforts which tend primarily to show that the witness is not worthy of belief, in narration; in short, that he lies. Jones on Evidence (2d Ed.) § 2396.

Mr. Jones, in his discussion, confines the use of the word "impeachment" to: "(1) That the witness himself has made contradictory acts out of court, or that his reputation for truth and veracity is bad; (2) the attempt to show any such matters being by witnesses other than the particular witness or by extrinsic evidence." See section 2397. Further discussing the impeachment by contradiction, the same author says: "As shown in the preceding section, a party may impeach the credit of a wit-

ness called by his adversary by contradicting the testimony of such witness by showing that at times prior to his present testimony such witness made statements or did acts inconsistent with such testimony. To this general rule, however, there is a well established limitation: A party cannot, by drawing out on cross-examination statements by a witness which are irrelevant and collateral to the principal issues, gain the right to contradict such testimony by showing inconsistent statements of the witness at other time." See section 2399. A vast number of authorities are cited, including State v. Kile, 29 N. M. 55, 218 P. 347. These methods are statutory in this jurisdiction. See sections 2177, 2178, 2180, Code 1915.

In the same enactment was another section as follows:

"A witness may be questioned as to whether he has been convicted of any felony or misdemeanor, and upon being so questioned, if he either denies the fact or refuses to answer, the opposite party may prove such conviction; and a certificate, the substance and effect only, omitting the formal part, of the indictment and conviction for such offense, purporting to be signed by the clerk of the court or other officer having the custody of the records of the court at which the offender was convicted, or by the deputy of such clerk or officer under the seal of said court, shall, upon proof of the identity of the witness, as such convict, be sufficient evidence of his conviction."

Section 2179, Code 1915.

It is under this section that the impeachment was attempted in the case at bar. The exact assignment of error is as stated at the beginning of our discussion on this point. As the argument somewhat broadens the point presented, we will consider the matter in the light most favorable to the appellant. We see no error in striking the evidence relative to the indictment, and the plea of guilty, as this was immaterial under our statute; the conviction of crime being the material matter. "Besides, a plea or verdict of guilty, it is essential that a judgment or sentence be passed thereon." Encyclopædia of Evidence, vol. 7, p. 215.

In Commonwealth v. Gorham, 99 Mass. 420, it was said:

"The term 'conviction' is used in at least two different senses in our statutes. In its most common use it signifies the finding

of the jury that the prisoner is guilty; but it is very frequently used as implying a judgment and sentence of the court upon a verdict or confession of guilt. * * * We think the obvious purpose of the Legislature was to restore the competency of a witness against whom the record of a judgment for crime was produced, but to permit the same evidence to be used as affecting his credibility, (in all cases requiring the same complete record of the whole case), and that the word 'conviction' is here used in the broader and less technical sense, and implies the judgment of the court. It could not have been the purpose of the lawmakers to permit evidence of moral guilt, as distinguished from guilt legally established, to be produced against the witness. If this were so, then the finding of an indictment by the Grand Jury, which was afterwards quashed, or upon which a nolle prosequi was entered, might with equal propriety be permitted to be shown."

However, the court overruled the offer of appellant which clearly evinced a purpose to question the witness concerning his "conviction of assault with a deadly weapon."

The appellant afterwards introduced the record of conviction of the witness of the offense concerning which he had been questioned, together with the sentence of the court. So it appears that the appellant had the benefit of all that the statute contemplated he could have. If appellant had the benefit of the impeachment the statute contemplates, we do not see how he could complain that he was not allowed to lay the predicate imposed by the statute, in order to accomplish the result. The situation is similar to that presented in State v. Carabajal, 26 N. M. 384, 193 P. 406, 17 A. L. R. 1098, where it was decided:

"The error of the district court in sustaining an objection to a question asked for the purpose of laying the foundation for impeachment is not available to the appellant, when as a matter of fact he is permitted to prove that the witness did make the contradictory statement called for in the question."

Appellant argues that he was precluded from arguing to the jury, that the complaining witness had been impeached as to his credibility through the process of contradiction. It is true that, if the witness had been required to answer the question as to whether or not he had been convicted of the offense in question, and had answered in the negative, appellant might have argued that the witness had lied, but it would not have been concerning matter "relative to the subject-matter of the cause, and inconsistent with his present testimony" in the case,

as provided in section 2178 of the Code. In other words, this section of the statute, providing for proof of the conviction of a criminal offense to affect the credibility of a witness, does not contemplate the mode of impeachment known as impeachment by contradiction, but proceeds upon the theory that former criminals are less trustworthy in narration than other persons. The witness, in response to the first question propounded to him as heretofore quoted, had answered in the affirmative and attempted to add some qualifying statements. If required to answer categorically, whether he had been convicted or not, it is a matter of speculation as to whether he would have admitted or denied it. Under all the circumstances, we are unable to say that the appellant was deprived of a substantial right, and therefore hold that there was no prejudicial error requiring a reversal.

Appellant also claims that:

"The court erred in sustaining the objection of the State to the questions propounded to the complaining witness by the defendant under cross-examination as to whether or not he had served a term in the penitentiary the defendant offering to prove the affirmative of that issue."

The question, objection, and ruling, are as follows:

"Q. In that cattle stealing case that you admitted you were convicted in you were sentenced to serve a term in the penitentiary and were fined $500.00?

"Mr. Voorhees: We object to that as not the best evidence.

"The Court: Objection sustained.

"Mr. Gilbert: We offer to prove the affirmative of that question.

"The Court: The offer is overruled."

Our statute, section 2179, Code 1915, heretofore quoted, which permits the credibility of the witness to be assailed by showing that he has been convicted of "any felony or misdemeanor," does not attach a greater degree of opprobrium to the conviction of one offense than another.

Appellant cites three cases as supporting his claim of right to question the witness as quoted, the witness having previously admitted on cross-examination that he had been

convicted in the district of Taos county of stealing cattle: Fondren v. State, 204 Ala. 451, 86 So. 71. The opinion in this case cites Moore v. State, 12 Ala. App. 243, 67 So. 789, which explains the difference between the Alabama statute and ours; the punishment by imprisonment in the penitentiary having a bearing as to the grade and nature of the crime, the conviction of which afforded impeachment in Alabama. Another case cited is Keets v. State, 76 Tex. Cr. R. 384, 175 S. W. 149. The holding was that an accused who testifies in his own behalf can be forced to testify that he has been previously convicted and served a term in the penitentiary. A cursory examination of the Texas laws indicates that the matter of impeachment of witnesses is not specifically controlled by statute. The decisions on impeachment of witnesses are collected in the notes to article 3687, Vernon's Sayles' Texas Civil Statutes 1914, which provides that:

"The common law of England as now practiced and understood shall, in its application to evidence, be followed and practiced by the courts of this state, so far as the same may not be inconsistent with this title or any other law."

At the common law it was the conviction of felony which was evidence of bad character for truth. A casual examination of the cases cited in the note referred to, indicates that the rule in Texas is that the grade of crime of which the witness has been convicted has a material bearing as to the admissibility of the evidence. Under such circumstances, it would not seem to be error to couple the punishment imposed with the fact of conviction. In State v. Silver, 101 N. J. 232, 127 A. 545, 2 N. J. Misc. R. 479, cited by appellant, it was held not improper to prove by cross-examination anything the record of conviction would show, including the sentence. This would not be the same as saying that the questioner could as a matter of right inquire into the nature of the sentence, if the conviction is admitted by the witness.

On the other hand, the Illinois court, in Gallagher v. People, 211 Ill. 158, 71 N. E. 842, said:

"Formerly a person who had been convicted of any crime was incompetent to testify upon the trial of a criminal case, but that disability was removed by our statute, with the qualification that

such conviction might be shown for the purpose of affecting his credibility. 1 Starr & C. Ann. St. 1896, c. 38, div. 13, § 6, p. 1397. Under the statute, the guilt or innocence of the defendant of the crime for which he had been convicted, his punishment, his term of service, etc., are wholly immaterial and incompetent. That he may have been pardoned proves nothing as to his credibility, and to permit evidence of that fact would simply be to introduce into the case a collateral issue."

The Wisconsin Supreme Court in Cullen v. Hanisch, 114 Wis. 24, 89 N. W. 900, said:

"The statute authorized the proof of such conviction to affect the plaintiff's 'credibility, either by the record or by his own cross-examination.' Sec. 4073, Stats. 1898. The mere fact of being in jail would be without significance."

In California, the Code of Civil Procedure (section 2051) provided:

"A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony."

In construing this section, in People v. Chin Hane, the Supreme Court of that state, on pages 606 and 607 of 108 Cal. (41 P. 700), says:

"In order to impeach the credibility of a witness, including a defendant when he testifies, the witness may be asked if he has ever been convicted of a felony. The details and circumstances comprising the offense should not be gone into. But in view of the statute (section 2051, Code Civ. Proc.), which allows the proof of the fact to be made either by the evidence of the witness himself, or by the record of conviction, it would appear that not only the fact of the conviction could be shown, but the name of the particular felony of which the witness had been convicted. Beyond this the examination should not go."

Other authorities to the same effect might be cited, but it seems unnecessary. In Territory v. Chavez, 8 N. M. 528, 45 P. 1107, we reached the same conclusion as the Illinois court so far as the effect of a pardon is concerned. It had been shown on examination that certain witnesses had been convicted of crime and sent to the penitentiary. Their pardons were then produced by the prosecution. The court said:

"These pardons operated to restore them to competency as witnesses, but did not restore their credit. It (the pardon) removes

the disability, but does not change the common law principle, that the conviction of an infamous offense is evidence of bad character for truth."

In Territory v. Garcia, 15 N. M. 538, 110 P. 838, it was held that, when conviction of a criminal offense is shown to affect the credit of a witness, such conviction must stand as a fact not open to explanation by the witness.

Under a statute like ours, we do not see that a greater or more burdensome term of service would add anything to the discredit of a witness shown to have been convicted. If that were so, the witness might then come back and show good behavior as a prisoner, commutation of sentence, parole, or other circumstances which would, as the Illinois court said, introduce into the case further collateral issues. Likewise, under the Garcia Case, supra, if the conviction may not be explained by the witness to his advantage, we do not see how the nature or extent of the punishment or the term of service under a conviction is material. The point must be ruled against the appellant.

The concluding assignment of error is that the court erred in overruling the motion for a new trial upon the ground that the verdict was contrary to the evidence.

It is conceded by the appellant that the evidence is conflicting. That it is a well-settled rule, here as well as elsewhere, that, where the evidence is conflicting and there is evidence to support the verdict, it is conclusive upon appeal, is not disputed.

It is sought to show that there are certain inherent improbabilities in the sustaining evidence which discredit such evidence. Also it is suggested in the motion for new trial that the verdict is the result of passion and prejudice aroused by the forceful but improper address of the district attorney. This we may not consider, because the alleged argument is not embraced in the bill of exceptions. See State v. Parks, 25 N. M. 395, 183 P. 433, and Davis & Carruth v. Valley Mercantile & Banking Co. et al. 33 N. M. 295, 265 P. 35. Furthermore, no error was preserved as to the alleged improper argument.

We have said that the truth of a given disputed fact is for the jury. Thayer v. Denver & R. G. R. Co., 28 N. M. 5, 205 P. 733.

"It is a familiar rule that it is the peculiar and exclusive province of the jury to decide upon the credibility of witnesses. In the exercise of this duty the court should not interfere with the decision of the jury. There is no distinction in this respect between civil and criminal cases." Jones on Evidence (2d Ed.) § 2464.

Mr. Jones says further, in section 2465:

"Often the appearance of a witness on the stand, his quibbling, his reluctance, his hesitation, or his zeal and apparent interest, not expressed in words, effectually discredits the witness, and in such case the trier of facts is at liberty to refuse to find in accordance with the statements made."

These are some of the considerations which give rise to the rule that an appellate court will not disturb the verdict of a jury where there is any evidence to support it. We have carefully read the record, and we see no reason to depart from the controlling rules heretofore mentioned.

Therefore the judgment of the district court must be affirmed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.