251 P.2d 653

**STATE v. ALDRICH.**

No. 1027.

Supreme Court of Arizona.

Dec. 22, 1952.

Warren H. Lynch, of Tucson, for appellant.

Fred O. Wilson, Atty. Gen., Maurice Barth, Asst. Atty. Gen., F. Lewis Ingraham, County Atty., and William W. Nabours, Deputy County Atty., Yuma, for appellee.

PHELPS, Justice.

The appellant was convicted on two counts of an information charging him (1) with an assault with a deadly weapon, and (2) with resisting public officers in the discharge of their duties in attempting to place him under arrest pursuant to command of a valid warrant which they then and there had in their possession.

From the judgment and sentence pronounced thereon this appeal is being prosecuted.

The facts are that appellant's wife had sworn to a complaint on December 6, 1951, charging him with an aggravated assault upon her. A warrant issued thereon. The warrant was placed in the hands of Deputy Sheriffs Winford B. Kelly and William N. Meador for service the next morning, to wit, on December 7. Investigation disclosed that appellant had fled. Upon being informed by his wife the evening of December 14 that appellant was at home the officers went to serve said warrant.

They were met outside the house by appellant's wife and after some conversation were invited in. Upon entering the small living room dimly lit by a kerosene lamp located in the kitchen, his wife called for appellant, who was in an adjoining bedroom, to "come on out, Harold, there is a couple of men to see you." Appellant came to the door with a small baby in his left arm. The right hand was not visible to the officers except as hereinafter stated because it was kept behind a curtain which Mrs. Aldrich had hanging over a portion of the door between the living room and bedroom. Officer Kelly testified appellant held a six-shooter in his right hand which he kept pointed at the officers during the entire time they were in the room. Aldrich and the officers were acquainted with each other. Officer Kelly informed appellant that they had a warrant for him and asked

him to come along with them. Appellant replied, "Don't come any closer; I am not going." The officers, according to Mrs. Aldrich, were four or five feet from appellant at the time. They tried to persuade appellant to go with them. Finally he said, "Now, you can go on and don't come back after me; I am not going." The officers left and later, to wit, on December 16 they arrested appellant in the 1900 block on Tenth Avenue in Yuma upon a warrant based upon the complaint in the instant case. Defendant then offered no resistance but requested to be taken to his home and let him get his gun and he would shoot it out with them.

On that same day the officers went to appellant's home and after some difficulty procured from Mrs. Aldrich the gun with which it is alleged the assault upon them was committed. The gun is a .32 caliber automatic. At the time it was given to the officers by Mrs. Aldrich there were seven loaded shells in the clip and one in the chamber of the gun. Officer Kelly testified that on the night of December 14 when appellant stood in the door between the two rooms of his home with his right hand behind the curtain he heard the safety click off and he reached over and felt the gun through the curtain and determined that he held a gun in his right hand, and as he released the gun and withdrew his hand the curtain swung to one side and he clearly saw the gun.

Mrs. Aldrich withdrew her complaint against appellant on December 15 and on that date Officer Kelly filed a complaint against appellant upon which the information in this case was based.

Appellant represented himself at the trial in the superior court but has counsel here who has presented five assignments of error, each of which he claims constitutes grounds for reversal. We think it desirable to set out the assignments in haec verba.

1. The court erred in failing to allow the defendant the right to show prosecution's witness Winford B. Kelly's motives, bias, and interest in the matter.

2. The court erred in openly reprimanding the defendant herein in the presence of the jury concerning his failure to employ counsel and that said reprimand being directed to the defendant himself, adversely affected the jury.

3. The court erred in volunteering the statement during the course of defendant's cross-examination of prosecution's witness William N. Meador, to wit: "I don't think this would help the jury in any degree. Proceed with another question."

4. The court erred in sustaining prosecution's general objection to defendant's question to defendant's witness, Melba Aldrich, concerning who encouraged her to have a warrant made out for defendant's arrest.

5. The court erred in allowing the case to go to the jury on the assault with a deadly weapon count as the State failed to prove that defendant had any present ability to make such an assault, to wit: that the gun was loaded at the time of said alleged assault.

We will consider these assignments according to subject matter. The first and fourth are based upon the ground that the court refused to allow defendant the right to show the motives, bias and interest of the witness Winford B. Kelly. These assignments are based upon the following cross-examination of the witness Kelly and direct examination of Mrs. Aldrich by defendant:

"Q. Could it be that perhaps you had an ulterior motive (in serving this warrant)?"

An objection interposed by Mr. Nabours was sustained. Mr. Aldrich then asked Officer Kelly:

"Q. Did you know my wife prior to speaking to her on this night of December 14, 1951? A. Yes, I did.

"Q. What was the extent of that acquaintance? A. She worked up at the Western Fashion Store while I was employed there.

"Q. Did you ever become a little better acquainted than just a casual acquaintanceship? A. I worked with her, is all.

"Q. Perhaps, Mr. Kelly, you had personal reasons for liking to see me in jail.

"Mr. Nabours: Your Honor, I object to that.

"The Court: Objection sustained.

"Mr. Aldrich: Your Honor—

"The Court: Let's have no debate. I don't like to debate. Proceed."

And again on direct examination of Mr. Kelly, appellant asked the following questions:

"Q. Would you kindly tell the Court why on this criminal complaint a change has been made here from a revolver to a .32 caliber automatic pistol?

"Mr. Nabours: I object to that, if your Honor please. It is immaterial.

"The Court: The objection is sustained.

"Q. But yet this change was made after an automatic has been taken from the residence of the defendant; is that right?

"Mr. Nabours: I make the same objection to that question.

"The Court: The objection is sustained. It is assuming a fact not in evidence.

"Mr. Aldrich: Your Honor, may the jury take a look at this criminal complaint?

"The Court: No, they may not."

The complaint filed on December 15 and signed by Mr. Kelly described the weapon as a revolver. This description appears in two places in the complaint and the complaint further shows that the word "revolver" was stricken and the words ".32 caliber automatic pistol" inserted by interlineation in each place. The complaint was filed on December 15 and warrant issued on that date and the .32 caliber automatic pistol was taken from the home of defendant on the 16th of December.

And again in defendant's examination of his wife as his witness the following questions and answers appear in the transcript:

"Q. Did anyone encourage you to have this warrant made out for my arrest (referring to warrant issued on her complaint)? A. Yes.

"Q. Who encouraged you to have this warrant made out for my arrest?

"Mr. Nabours: If your Honor please, I object to this.

"The Court: The objection must be sustained.

"Mr. Aldrich: Q. Did Mr. Kelly encourage you to have the warrant made out?

"Mr. Nabours: Your Honor, I object to—

"The Court: The objection is sustained.

"Mr. Aldrich: Q. Mrs. Aldrich, will you tell me who arranged that you see the district attorney to have the warrant made out?

"Mr. Nabours: If your Honor please, I am going to object to that question also.

"The Court: The objection must be sustained.

"Mr. Aldrich: Q. On the night that officers came to serve this warrant did you or did you not meet them outside of our residence? A. Yes, I did.

"Q. What was the purpose of you meeting them outside the residence when you knew that they probably had a warrant for my arrest?

"Mr. Nabours: I object to the form of the question, your Honor. It is calling for a conclusion of the witness.

"The Court: The objection must be sustained."

And later on in the examination the following questions were asked:

"Q. Why did you go out there to meet them?

"Mr. Nabours: If your Honor please, I object on the ground that there is no foundation.

"The Court: Objection sustained.

"Q. Why did you not wait for them to come in the house?

"Mr. Nabours: Your Honor, I object to that on the same grounds.

"The Court: The objection is sustained."

And later:

"Q. What was the first thing that you told Officer Kelly and Officer Meador upon meeting them? A. When I first went out I told Mr. Kelly, 'I am going to drop the charge, the ones I have made against Harold. He is here tonight and we are trying to get things straightened out and I am going down and drop the charge.'

"Q. What did Mr. Kelly say in reply? A. He said 'That is fine, Mrs. Aldrich. We still want to see your husband. Is he in the house?' and I said 'Yes'."

Later, during the examination, this question was asked:

"Q. After putting the defendant in jail, at any time did Mr. Kelly attempt to contact you?

"Mr. Nabours: If your Honor please, I object to that.

"The Court: Objection sustained."

It appears from the above-quoted portions of the transcript of evidence that appellant was not permitted to show either on direct and cross-examination of the witness Kelly or on direct examination of defendant's wife, facts which might tend to show a motive on the part of prosecutor Kelly for having appellant incarcerated or that might tend to show bias and prejudice on his part against appellant.

██ It is the law that a defendant in a criminal case should be given wide latitude in cross-examining his prosecutor for the purpose of showing motive, bias or prejudice. State v. Collins, 33 Kan. 77, 5 P. 368; State v. Burkett, 33 N.M. 159, 262 P.

532; State v. Guerrero, 58 Ariz. 421, 120 P.2d 798; State v. Rothe, Ariz., 249 P.2d 946. See also Arnold v. State, 100 Tex.Cr. R. 387, 272 S.W. 798.

Notwithstanding the fact that Mr. Kelly may be entirely innocent of any of the implications inferred from the questions, the defendant had the right to ask him if he had personal reasons for liking to see appellant incarcerated. Following this objection Mr. Aldrich addressed the court, "Your Honor—" whereupon he was interrupted by the court with the following statement: "Let's have no debate. I don't like to debate. Proceed." The court overlooked the fact, I suspect, that in addressing his Honor appellant was doing so as counsel for himself, not as a defendant being prosecuted, and we believe that he was entitled to the same consideration as might have been given to any member of the bar in asking to show the court why his ruling was in error, if it was. The ruling complained of was made upon an objection without counsel stating any reason for making such objection. This is equivalent to no objection at all. State v. Guerrero, supra. Questions preceding the one above quoted had asked the witness Kelly if he had any ulterior motive in serving the warrant upon defendant and if he had ever become a little better acquainted with appellant's wife than just a casual acquaintanceship. The prosecuting witness was then asked to tell the court why the weapon was described as a revolver in the criminal complaint and changed to a .32 caliber automatic pistol to which an objection was made upon the ground that it was immaterial, which objection was sustained by the court. The appellant then asked, "But yet this change was made after an automatic has been taken from the residence of the defendant, is that right? to which an objection was made upon the same ground. The court sustained the objection upon the ground that it was assuming a fact not in evidence. The complaint was a part of the record. It was filed on December 15 and the automatic pistol was not seen by the witness Meador until it was taken from the home of appellant on December 16. The prosecuting witness Kelly testified that he heard the safety click off and reached out and felt the object through the curtain in the hand of appellant and as he took his hand away the curtain fell back and revealed the pistol.

On December 15 the witness Kelly apparently subscribed to a complaint against appellant which first described the weapon as a revolver. At least such information apparently was given the person who typed the complaint. The complaint shows the word "revolver" stricken in two places and the weapon described by interlineation as a .32 caliber automatic pistol. The question did not assume a fact not in evidence as we view it. Properly construed it asked if it wasn't true that the change was made after the automatic was taken from his residence. Clearly appellant was entitled to

an answer to this question as bearing upon the credibility of the witness as well as bias and prejudice. Appellant was also entitled to know when the word "revolver" was stricken and the interlineation "a .32 caliber automatic pistol" was written into the complaint.

 The appellant then addressed the court asking if the jury may take a look at the criminal complaint to which the court replied, "No, they may not." We believe that the request of the appellant was equivalent to an offer of the complaint in evidence which does appear to us to be a material matter in the case for the determination by the jury of whether defendant did have a pistol in his hand on the night of December 14 and if so, whether it was a .32 caliber automatic the same as taken from his residence on December 16 and whether the witness did actually see it on the night of December 14.

The questions above set forth addressed to the prosecuting witness we believe should have been permitted to be answered as bearing upon the question of bias, interest and motive of the prosecuting witness. The questions above set out as addressed to his wife concerning whether or not she had been encouraged by anyone to have the warrant issued we feel should have been permitted to be answered for the same reason. Furthermore the questions addressed to her concerning the reasons for her meeting the officers outside the residence should have been permitted to be answered for the

reason that if she told them, as she later stated she did, that she was going to dismiss the complaint; that she and her husband were trying to accommodate their differences and continue their marital relations, we believe constitute reasonable though not mandatory grounds for the officers to defer execution of the warrant until it could be ascertained if the home could be preserved. The fact that the witness was later permitted to relate what she said to the officers outside her home cures, to some extent the refusal of the court to permit her to state why she went outside to meet them. The appellant then asked his wife the question:

"Q. After putting the defendant in jail, at any time did Mr. Kelly attempt to contact you?"

"Mr. Nabours: If your Honor please, I object to that.

"The Court: Objection sustained."

We think this question also goes to motive and should have been permitted to be answered.

 The qualities of courtesy and patience are of the very nature of the learned trial judge who sat in this case. These virtues combined with an academic excellence and a rare legal ability have given him the distinction for many years of being an outstanding jurist, and it is with considerable diffidence that we point out that the rulings to which reference is made above indicate an abandonment for the mo-

ment at least, of the quality of patience. It is reputed however, that at times even Jove nods. We believe the above ruling of the court deprived appellant of a fair and impartial trial in that he was not given the opportunity to show any motive or any bias or prejudice on the part of the prosecuting witness Kelly against appellant, if such motive or bias and prejudice did exist, and he was entitled to ascertain whether or not it did exist. This constitutes reversible error vitiating the verdict as to both counts.

In view of the disposition of the case as above indicated it is unnecessary to consider assignment No. 2. There is no merit to assignment No. 3. In disposing of assignment No. 5 relative to whether an unloaded pistol constitutes a deadly weapon in a charge of "an assault with a deadly weapon" we will merely state that thus far this court has not overruled or modified the doctrine relating thereto as set forth in Territory v. Gomez, 14 Ariz. 139, 125 P. 702, 42 L.R.A.,N.S., 975, which is to the effect that under the circumstances of this case the burden is upon the defendant to prove that the gun was not loaded. See Gonzalez v. State, 21 Ariz. 385, 188 P. 872; Lee v. State, 27 Ariz. 52, 229 P. 939.

Judgment reversed and cause remanded for a new trial.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.