401 P.2d 733

**STATE of Arizona, Appellee,**

**v.**

**Antonio Tapia BURRUELL, Appellant.**

**No. 1494.**

Supreme Court of Arizona.

En Banc.

May 5, 1965.

**38**

Darrell F. Smith, Atty. Gen., Phoenix, Norman E. Green, Pima County Atty., Carl Waag, Deputy County Atty., Tucson, for appellee.

Ted Pedersen, Tucson, for appellant.

McFARLAND, Justice:

This is an appeal from a judgment and sentence for illegal sale of narcotics in violation of. A.R.S. § 36–1002.02, as amended. The appellant, hereinafter referred to as the defendant, on April 24, 1964, was adjudged guilty on two counts of illegal sale and sentenced to twelve (12) to fifteen (15) years on each count, the terms to run concurrently.

. The pertinent facts are as follows: Defendant was arrested on November 17, 1963, in the city of Tucson, Pima County, Arizona, and was subsequently charged with two counts of illegal sale of narcotics. After a preliminary hearing and arraignment, at which defendant pleaded not guilty, a trial date of February 19, 1964, was set. At the trial, a jury was duly impaneled and sworn, after which the deputy county attorney made an opening statement. Immediately thereafter, counsel for defense made his opening statement. Defense counsel's statement was delivered without objection by either the court or opposing counsel. Shortly thereafter, the deputy county attorney moved for a mistrial on the grounds that defense counsel's opening statement caused "irreputable harm" to the trial of the case, and that no instruction from the court could "wipe the slate clean" with reference to the objectionable statements. Defense counsel objected to the motion, but a mistrial was granted. A new trial date was set for April 13, 1964. On March 12, 1964, defendant filed a motion to quash the information and to suppress the testimony of the state's star witness, one Henry Lugo, Jr., an informer, who had made the alleged purchase from defendant. Defendant's motion asserted that .to try

him again would constitute double jeopardy in violation of the United States and the Arizona constitutions. Further, defendant claimed that Mr. Lugo was an incompetent witness due to Lugo's heavy use of narcotics, and due to pressures brought to bear upon him by the county attorney and the sheriff's office. The motion was denied, and defendant stood trial on April 13, 1964, and was thereafter adjudged guilty on both counts.

Defendant contends that it was error for the court to grant the deputy county attorney's motion for mistrial, claiming there existed no legal cause for such action, and therefore his trial on April 13, 1964, for the same offense placed him in double jeopardy.

In United States v. Tateo, 216 F.Supp. 850, the United States District Court of the Southern District of New York stated:

"The principle of double jeopardy made controlling by this fact is that retrial after the termination-before-verdict of a prior trial is barred unless the termination was either consented to or based upon 'exceptional circumstances'.

\*      \*      \*      \*      \*      \*

"Federal courts, in seeking to safeguard a defendant's 'valued right \* \* \* to have his trial completed by the particular tribunal summoned to sit in judgment on him', Downum v. United States, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, have been guided by the strictures of Mr. Justice Story who, in writing for a unanimous Supreme Court in 1824, said:

"'We think, that in all cases of this nature, the law has invested Courts of Justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; \* \* \*.'" 216 F.Supp. at 852.

In State v. Puckett, 92 Ariz. 407, 377 P.2d 779, this court held:

"The general rules of law in this area are well established. Jeopardy attaches after the proceedings in a criminal trial have commenced, and once attached, unless removed for some legal reason, the one in jeopardy cannot be again tried for the same offense. Ap-

plication of Williams, 85 Ariz. 109, 333 P.2d 280 (1959); Westover v. State, 66 Ariz. 145, 185 P.2d 315 (1947). The prime issue thus becomes whether the reason given by the judge for declaring the mistrial was such a legal reason." 92 Ariz. at 409, 377 P.2d at 780.

Therefore, the reviewing court must examine the record to determine whether or not "legal reason," in the nature of prejudicial remarks, existed in the opening statement of the defense which necessitated a mistrial and the granting of a new trial. In order to make a determination as to the sufficiency of the "legal reason" for the granting of the mistrial, several questions must first be considered, viz.:

1. What is the purpose of the opening statement?

2. What is the latitude afforded counsel in presenting his opening statement? In other words, did defense counsel have the right to make the remarks he did?

3. Was defendant's opening statement a fair statement of evidence, and did he exceed the bounds permitted under Rule 255, Subs. 3, of Criminal Procedure, 17 A.R.S. 474?

▬ The purpose of an opening statement is properly set forth by the court in State v. Erwin, 101 Utah 365, 120 P.2d 285:

"The purpose of an opening statement is to advise the jury of the facts relied upon and of the questions and issues involved, which the jury will have to determine, and to give them a general picture of the facts and the situations, so that they will be able to understand the evidence. Counsel should outline generally what he intends to prove, and should be allowed considerable latitude. He should make a fair statement of the evidence, and the extent to which he may go is largely in the discretion of the trial court. He should not make a statement of any facts which he cannot legally prove upon the trial; nor should he argue the merits of his case, or relate the testimony at length. See 64 C.J. 235, Sec. 251; State v. Distefano, 70 Utah 586, 262 P. 113; People v. Reed, 333 Ill. 397, 164 N.E. 847; Green v. State, 172 Ga. 635, 158 S.E. 285." 120 P.2d at 313.

In Turley v. State, 48 Ariz. 61, 59 P.2d 312, this court held as follows:

"* * * generally held that such a statement is not, and should not be, permitted to become an argument upon the case, but it is merely intended to advise the jury sufficiently so as to prepare their minds for the evidence which is to be heard, and the extent to which counsel will be permitted to go in making such a statement is subject

to the control of the court in the exercise of a sound discretion." 48 Ariz. at 73, 59 P.2d at 317.

Defense counsel's statement contained the following elements which he stated he intended to prove:

1. "An unusual and difficult defense of a frameup."

2. An alibi defense as to the date upon which the alleged sale took place.

3. Defendant's case was one of 20 different cases involving similar charges, based upon the purchase of narcotics from those charged by a state's informer who was the prosecution's chief witness.

4. "A frameup" based upon the testimony of an informer who had developed a $50–$100 per day drug habit; who was a "burglar and a thief," which fact was known to the County Attorney's office, but the County Attorney's office did not prosecute the informer.

5. The informer's compensation "by the State Liquor Control people" was placed upon a bonus basis, viz., "that for each buy that he made from these various defendants he received a bonus."

The basis for the mistrial as contended by the deputy county attorney is set forth in his motion which reads as follows:

"At this time, we would like to make a motion for a mistrial inasmuch as irreputable harm has been done with reference to this case by the opening statement of Mr. Ted Pedersen. The elements that he intends to prove cannot possibly be legally entered whether they are true or not with reference to the County Attorney's Office, and with reference to the police staff. And the State feels that, at this time, that the Judge, although he may direct the jury somewhere in the course of this trial to disregard the opening statement, with reference to these particular portions that I have indicated, that that, in and of itself, will not completely wipe out of—wipe the slate clean with reference to those matters, and they will also wonder, unless—the State cannot receive a fair trial in this matter."

The portion of the opening statement referred to by the defense counsel in his motion reads as follows:

"A frameup, Ladies and Gentlemen. We will prove, that during the time Mr. Lugo was working for the State Liquor Control people, he not only was a heavy user of narcotics, running between fifty and one hundred dollars a day, we will also prove that he was a burglar and a thief during this time. We will prove that the County Attorney's Office has knowl-

edge of this. We will prove this from officers of the Pima County Sheriff's Office, and the City of Tucson Police Department. We will prove that they investigated Mr. Lugo. We will prove that they presented a case to the County Attorney's Office against Mr. Lugo, not one, but four; but, the one case we will try to show is ironclad. We will try it right here in this courtroom, and we will show that the County Attorney's Office refused to prosecute the State's witness, Mr. Lugo. We will show that Mr. Lugo, on his testimony that you will hear, is under this axe; this axe of a criminal charge being placed against him putting him in jail, removing him from his heroin. We will show the interest of the State's witness in testifying, as you will surely hear him testify, that for each buy that he made from these various defendants, he received a bonus. His compensation, prior to November 15, and up to when he started work September 1st, or 2nd, in Tucson, was on the basis of a bonus. Not on the basis of salary. We will show, that on November 15, he went on the payroll at a hundred a week plus expenses. And finally, when it is all over, and when presented to you, we will ask that you find the Defendant not guilty of both counts. Thank you very much."

The question as set forth in the Puckett case, supra, is whether there was legal reason for granting a mistrial. In the event an improper statement is made, there are two courses of action open to a court. One would be to instruct the jury to disregard the objectionable portions, and the other would be to declare a mistrial. The court in the instant case found that there were objectionable features in the opening statement, and exercised its discretion under the latter and granted mistrial.

As we have pointed out, the purpose of an opening statement is to advise the jury of facts upon which the defense would rely in his defense. So the question here is whether the deputy county attorney was correct in stating—in effect—that the evidence set forth in the defense opening statement was not admissible in the trial. In passing upon this question it is not for this court to decide as to the truth of the statement of defense counsel in regard to the facts but whether, if the facts did exist, they would be proper evidence. The gist of the statement here is that defendant had been "framed up" on by the witness Lugo— that his reason for "framing" defendant was that Lugo had committed other crimes —that the sheriff's office knew of these crimes and had reported to the county attorney, and that this was an axe over Lugo's head. We have held in other cases such evidence was admissible. In the case of

State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R.2d 1120 we said:

"Evidence offered to impeach the credibility of a witness by showing that he has a motive to testify on behalf of the State or against the defendant is generally admissible as proper cross-examination whether such evidence also tends to prove that the witness has committed acts in violation of the law. As stated in Annotation, 62 A.L.R.2d 610, at page 624:

" 'The rule allowing great or liberal latitude in the cross-examination by defendant of a witness for the prosecution, with respect to his motive for testifying, is especially applicable where such witness is a codefendant or accomplice of the accused, or is charged with or threatened with criminal prosecution for an alleged offense not connected with that with which the person against whom he testifies is charged, and whose testimony against defendant may be influenced by a promise of, or hope or expectation of, immunity or leniency with respect to his case as a consideration for testifying against defendant.' " 87 Ariz. at 300, 350 P.2d at 759.

In State v. Holden, 88 Ariz. 43, 352 P.2d 705, we said:

"We deem it unnecessary to set out the specific questions (see footnote 1, supra) the defendant proposed to ask on cross-examination of witness Deutsch, which demonstrate whereby defendant was deprived and restricted of freely interrogating the witness as to his motives, bias and interest. Suffice it to say that the defendant was not permitted to elicit testimony as to whether defendant had learned of at least two illegal transactions while he was Chief Right-of-way Agent that compelled witness Deutsch and Kelly Moore to sell land they had acquired to the State for a financial loss; that defendant learned of another transaction where witness Deutsch and Kelly Moore had purchased land, knowing that the State would need the land, and forced Deutsch and Moore to deed the land to the State at a loss; whether or not witness Deutsch was involved in similarly illegal transactions with other persons, particularly Kelly Moore; whether the plan and scheme testified to by witness Deutsch to defraud the State was employed by witness Deutsch and Kelly Moore, instead of with the defendant and the refusal of the trial court to permit defendant to question such witness as to certain exhibits to test his memory, veracity and motives." 88 Ariz. at 56, 352 P.2d at 715.

**44**

In State v. Aldrich, 75 Ariz. 53, 251 P.2d 653, this court, in holding it was reversible error not to permit cross-examination of the officer in regard to his acquaintance with defendant's wife as to whether he had personal reasons for wishing to see defendant in jail, we stated:

"It is the law that a defendant in a criminal case should be given wide latitude in cross-examining his prosecutor for the purpose of showing motive, bias or prejudice. State v. Collins, 33 Kan. 77, 5 P. 368; State v. Burkett, 33 N.M. 159, 262 P. 532; State v. Guerrero, 58 Ariz. 421, 120 P.2d 798; State v. Rothe, Ariz. [74 Ariz. 382], 249 P.2d 946. See also Arnold v. State, 100 Tex.Cr.R. 387, 272 S.W. 798.

"Notwithstanding the fact that Mr. Kelly may be entirely innocent of any of the implications inferred from the questions, the defendant had the right to ask him if he had personal reasons for liking to see appellant incarcerated." 75 Ariz. at 58, 251 P.2d at 657.

While in the instant case, as pointed out in the Aldrich case, supra, the evidence set forth in defense counsel's opening statement with reference to the sheriff's office and the county attorney's office might well not have been true, he still had the right to introduce such evidence in his defense. For the purpose of this case, we must assume that he could have produced the evidence as set forth in his opening statement. If the evidence would be admissible in court a defense attorney has the right to outline such evidence in his opening statement.

Having examined the opening statement of defense counsel, this court finds that there was not sufficient legal cause to grant the prosecution's motion for mistrial. On February 19, 1964, the jury had been sworn, and the trial of the case begun. It was stopped by the court's ruling of mistrial, which was not based upon proper "legal reason" or sufficient "exceptional circumstances." The second trial, on April 13, 1964, had the legal effect of placing defendant in double jeopardy. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033.

Defendant objected to the mistrial. The ruling of the court in granting the mistrial would have the effect of preventing defendant from offering the same evidence at the next trial. He wanted to proceed in the first trial with the jury that had been selected. He had a right to offer the evidence as stated in his opening statement, and the right to be tried by the jury which had already been sworn. Having once been placed in jeopardy, defendant cannot again be tried for the same offense. Therefore, the second trial of defendant was illegal. State v. Puckett, supra.

The judgment and sentence of the court are reversed and it is hereby ordered that

the case be dismissed and defendant be relieved from further proceedings in the case.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and UDALL, JJ., concurring.